UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ELLIOT PEREZ,

               Plaintiff,

      -against-                              **MEMORANDUM AND ORDER**
                                                 12-CV-5317
CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

               Defendant.
--------------------------------------------------------x

*Appearances*
*For the Plaintiff:*                              *For the Defendant:*
HOWARD D. OLINSKY, ESQ.          LORETTA E. LYNCH, ESQ.
Olinsky Law Group                        United States Attorney
One Park Place, 300 South State Street    KAREN T. CALLAHAN
Syracuse, New York 13202               Special Assistant U.S. Attorney
                                     Eastern District of New York
                                     271 Cadman Plaza East
                                     Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Plaintiff Elliot Perez seeks review of the final decision of the Commissioner

of Social Security ("Commissioner") denying his application for benefits under the Social

Security Act (the "Act").[1]   Both parties move for judgment on the pleadings.   The

Commissioner's motion is granted and Perez's motion is denied.

---

      [1] On February 14, 2013, Carolyn W. Colvin became the Acting Social Security
Commissioner.  The Clerk of the Court is directed to substitute Colvin as the named
defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

**I**

On January 9, 2009, Perez discontinued his job as a handyman after he sustained a back injury in a work-related incident.  As a result of his injury, Perez filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability due to back pain and high blood pressure.   After a disability examiner denied his applications, Perez had a hearing before an Administrative Law Judge ("ALJ").  After the ALJ denied Perez disability benefits at that hearing, Perez sought review from the Appeals Council.  That, too, was denied, rendering the Commissioner's decision to deny benefits final.  Perez timely sought judicial review.

The Commissioner's denial of benefits is supported by the record.  The relevant evidence proffered at the hearing before the ALJ is summarized below.

**A.  Medical Evidence**

***1.  Treating Physician:  Dr. Gelin***

Perez's injury, as demonstrated by the magnetic resonance imaging ("MRI"), caused broad-based disc bulge at L2-3 and central herniation at L5-S1, both creating impingement on the neural canal.  AR at 147.  Treating physician Dr.  Emmanuel Gelin examined Perez after his injury on January 15, 2009.  AR at 146.  Since that time, spanning from January 15, 2009 to July 15, 2010, Dr. Gelin submitted monthly "C-4" claims forms to Workers' Compensation.  AR at 190, 197-98, 207-13, 227-28, 232-33, 430.  In those reports, Dr. Gelin noted Perez's monthly physical therapy treatments and consistently maintained

that Perez was totally disabled from his regular work duties *Id.* Although Dr. Gelin never recommended epidural injections, surgery, or other invasive treatments, he concluded that Perez was "totally disabled." AR at 421. Along with the Workers' Compensation reports, Dr. Gelin included a one-page undated treatment note identifying severe pain and lumbar spasms in the lumbosacral spinal area, pain in the pelvic area and symptoms in the right leg.[2] AR at 226.

Similarly, in a letter dated July 21, 2009 stating that he last evaluated Perez on July 14, 2009, Dr. Gelin continued to conclude that Perez was still "totally disabled and unable to work." AR at 146. In a "Musculoskeletal Medical Report" form reporting findings from a July 21, 2010 examination, Dr. Gelin noted Perez's motor strength was 5/5 in the lower extremity, sciatica in the right leg and decreased range of motion in the lumber spine. AR at 412.

Dr. Gelin then completed a residual functional capacity questionnaire on September 28, 2010, assessing Perez's functional limitations. AR at 458-59. Dr. Gelin reported that Perez could walk 2-3 blocks without resting, utilize public transportation on a regular basis, and sit or stand for a twenty minute period at one time before needing to alternate positions. AR at 458-59. When asked to assess the length of time Perez could "sit and stand/walk *total in an 8-hour working day* (with normal breaks)," Dr. Gelin marked "less

------

[2] Dr. Gelin's impression was lumbago and radiculopathy, but he ruled out lumbar pelvic displacement. After prescribing Naproxen and Flexeril for pain, Dr. Gelin referred Perez for an orthopedic evaluation and an MRI of the lumbar spine. AR at 226.

than 2 hours." AR at 458. Dr. Gelin denoted that Perez would need a job that permitted him to take two to three unscheduled breaks for a period of fifteen minutes each during an 8-hour work day. AR at 458.

During the hearing, the ALJ requested from Dr. Gelin his treatment records in addition to his Workers' Compensation C-4 reports. AR at 461. Dr. Gelin provided no other documents in response, indicating that his only treatment records for Perez were "documented via C-4's." AR at 462.

### 2. Other Physicians:  Drs. Oliveto, Dickerson, and Lopez

On June 8, 2009, Dr. Frank Oliveto examined Perez to conduct an independent medical examination for Workers' Compensation. AR at 149. Dr. Oliveto reported Perez suffered from the same impairments identified by the MRI. AR at 152. Dr. Oliveto noted subjective complaints of pain and discomfort in the paralumbar spinal musculature with motion, but found "no spasm or tenderness" in that area. AR at 152. Dr. Oliveto opined that while Perez suffered from a "temporary partial disability" and could not return "to work *full* duty at this time," he was capable of performing his usual activities of daily living. AR at 152. (Emphasis added).

On January 4, 2010, Dr. Oliveto again saw Perez for an independent orthopedic reevaluation. AR at 308, 408. The record contains two conflicting accounts of that examination: one report states there is evidence of a "temporary partial disability," AR at 308, while the other states there were no significant objective findings, no palpable

4

muscle spasm, and thus no evidence of disability.  AR at 410.  However, Dr. Oliveto reconciled this inconsistency in an addendum dated August 17, 2009, where he confirmed the presence of a "temporary moderate partial disability."  AR at 408.  After determining Perez's injury was "not resolved," Dr. Oliveto recommended as treatment physical therapy three times per week for twelve weeks.

On October 19, 2009, Dr. Robert Dickerson saw Perez for a consultative examination per the Division of Disability Determination.  AR at 165.  Dr. Dickerson relayed that Perez's gait and stance were normal, he could walk on his heels and toes without difficulty, he could rise from a chair without difficulty, he used no assistive devices and needed no help changing for the examination.  AR at 166.  Dr. Dickerson diagnosed Perez with lumbar disk disease with disk herniation causing cord impingement on the right.  AR at 167.  Dr. Dickerson reported Perez to be "moderately restricted" from bending, lifting, carrying, and stooping; "mildly restricted for walking and stair climbing;" and "unrestricted for any other activity."  AR at 168.

On July 12, 2010, Dr. Joseph Lopez performed an independent orthopedic reexamination for the Workers' Compensation carrier after reviewing Perez's MRI report and the C-4 reports from Dr. Gelin.  AR at 463-66.  Upon examining Perez's lumbar spine, Dr. Lopez noted no spasm present, but that some tenderness in the paralumbar musculature area existed.  AR at 465. Dr. Lopez found Perez evidenced a "temporary mild causally related disability" under the Workers' Compensation guidelines.  AR at 466.

**B. Other Evidence**

*1. Perez's Testimony*

Perez testified he suffers from stabbing, constant pain that radiates from his lower spine down his right leg.  AR at 37-38.  Perez conceded, however, that his prescribed medicine alleviates that pain "until it starts to wear off."  AR at 38.  Despite that treatment and other notes do not document  complaints of significant fatigue, Perez testified that he takes one to two hour naps during the day.  AR at 37-38.  Due to his back pain, Perez claimed he could stand only for 20-30 minutes at a time and sit for twenty minutes at a time before needing to alternate positions.  AR at 34.  Perez testified that he experiences no difficulty with his personal care, showering or dressing, although his son assists him with tying his sneakers.  AR at 35.  Finally, Perez explained that he grocery shops without assistance, and can also do laundry, wash dishes and prepare a meal for himself.  AR at 35.

*2. Vocational Expert's Testimony*

The ALJ also educed testimony from vocational expert Melisa Fass Karlin, who stated that Perez's past work as a construction supervisor was "light and skilled," his job as a handyman was "medium and semi-skilled," and his job as a hand packager of custom jewelry was "medium and unskilled."  AR at 41-42.  The ALJ asked the expert to consider a hypothetical individual of the same age, education, work experience, and residual functional capacity as Perez.  AR at 43.  The ALJ instructed the expert to assume that the hypothetical individual could:  lift ten pounds frequently, stand and walk for two hours a day, sit for six hours a day, but would have to alter between sitting and standing

6

a few minutes every hour."   AR at 44.   Although the expert responded that such an individual "couldn't do any of his past work," she stated "there would be other work an individual with those restrictions could perform."   AR at 43.  Given that the Dictionary of Occupation Titles does not define a "sit/stand option," the expert based her opinion on her nearly twenty-five years of experience.   AR at 43-44.

## C.  The ALJ's Decision

In a decision dated January 28, 2011, ALJ Margaret A. Donaghy concluded that Perez was "not disabled" because he retained the residual functional capacity to perform a limited amount of sedentary work.  AR at 12, 15.  Applying the first three steps of the sequential five-step evaluation process, the ALJ found that: (1) Perez had not engaged in substantial gainful activity since January 9, 2009; (2) his degenerative disc disease of the lumbar spine qualified as "severe;" and (3) his lumbar spine impairments did not meet or medically equal the criteria for a listed impairment.  AR at 13.

The ALJ then found that Perez had the residual functional capacity ("RFC") to perform sedentary work, except that he could only occasionally climb, balance, stoop, kneel, crouch, and crawl, and he needed to alternate between sitting and standing for a few minutes every hour.  AR at 14–15.  Applying that RFC to the remaining two steps, the ALJ found (4) that Perez was unable to perform his past work but (5) that he could perform other work existing in significant numbers in the national economy.

In support of these findings, the ALJ set forth much of the medical evidence, generally noting that the results from most examiners did not support a finding that

Perez's limitations exceeded his residual functional capacity, AR at 16, and specifically noting the significant weight she afforded to the opinions issued by Drs. Oliveto, Lopez, and Dickerson, as well as the testimony proffered by the vocational expert.  AR at 16-18.

By contrast, the ALJ gave little weight to the specific functional limitations assessed by Dr. Gelin because those limitations were "inconsistent with the totality of the evidence  in the record, including the reports of Drs. Oliveto, Dickerson and Lopez."  AR at 16.

## II

Perez argues the ALJ's RFC determination was not supported by substantial evidence.  In that regard, he contends, first, that the ALJ improperly discounted the opinion of his treating physician, Dr. Emmanuel Gelin.  Second, Perez argues that the ALJ improperly dismissed his complaints of pain and fatigue.  Finally, as a result of the erroneous RFC determination, Perez claims that the ALJ posed an incomplete hypothetical question to the vocational expert which, in turn, flawed the ALJ's finding that significant jobs in the national economy existed for Perez to perform.

## III

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" refers to "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence supported the agency's findings, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983).

## A. Treating Physician Rule

Generally, an ALJ must afford a treating physician's opinion as to the nature or severity of the impairment controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). A different standard, however, applies where, as here, "a treating physician opines on the kind of work-related activities that the claimant can perform (i.e. RFC), or on the ultimate question of disability," *Elhanafi v. Barnhart*, 06-CV-411, 2007 WL 602391, at *5 (E.D.N.Y. Feb. 21, 2007). While opinions concerning these issues are not entitled to controlling weight or special significance, they still must be addressed in the ALJ's decision. *See id.*

Perez argues that the ALJ's rejection of Dr. Gelin's opinions violated the treating physician rule. The ALJ correctly noted, however, that "Dr. Gelin's statement regarding disability is not regarded as a medical opinion, but rather is an opinion on an issue reserved to the Commissioner." *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), ("A

9

treating physician's statement that the claimant is disabled cannot itself be determinative.").

The same is true of the RFC assessment completed by Dr. Gelin on September 28, 2010.  This court has previously held that "when a treating physician opines on the kind of work-related activities that the claimant can perform (i.e., RFC)," opinions on these issues "are not entitled to controlling weight or special significance.  *Elhanafi v. Barnhart*, 2007 WL 602391, at *5 (E.D.N.Y Feb. 21, 2007).  In any event, the ALJ noted that "Dr. Gelin's treatment notes contained no objective medical evidence supporting disability.  AR at 16.  Since Dr. Gelin failed to support his treatment notes with "medically acceptable clinical and laboratory or diagnostic techniques," the ALJ's refusal to afford controlling weight to his opinion did not violate the treating physician's rule.  *See Burgess,* 537 F.3d at 128.

Finally, the regulations entitle an ALJ to discount the treating physician's opinion where that physician issued opinions inconsistent with other substantial evidence in the record.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record").  Here, as noted by the ALJ, the "specific functional limitations assessed by Dr. Gelin, which include sitting for less than 2 hours in an 8 hour workday, standing/walking for less than 2 hours in an 8 hour . . . are inconsistent with the totality of evidence in the record."  AR at 16.  In determining that Dr. Gelin's opinion was inconsistent with the evidence in the record, the ALJ reviewed the opinions issued by, not one, but three other physicians; namely, the observations made by Drs. Oliveto, Dickerso, and Lopez.  All three opinions

10

supported the RFC assessment made by the ALJ, yet none supported a finding of additional limitations.  AR at 16.  Thus, the ALJ explained her rationale in accordance with the regulations and applied the proper legal standard in determining that Dr. Gelin's opinion could not sustain controlling weight.

Where an ALJ rejects a treating physician's opinion, she must consider several factors in determining how much weight it should receive, including "(i) the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.  *Halloran v. Barnhart*, 362 F.3d at 32; *see also* 20 C.F.R. § 404.1527(d)(2).  Failure of an ALJ to provide "good reasons" for discounting the opinion of a claimant's treating physician is a ground for remand."  *Snell,* 177 F.3d at 133.  Here, the ALJ furnished good reasons for rejecting the opinion of treating physician Dr. Gelin in favor of those issued by Drs. Oliveto, Dickerson, and Lopez.[3]

---

[3] The regulations charge an ALJ with the affirmative duty to develop the record; that is, the duty to "seek additional evidence or clarification from your medical source when the report from your medical source contains conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).  Upon the ALJ's request for clarification and additional information, Dr. Gelin responded that his treatment notes were documented in the C-4 Workers' Compensation forms.  AR at 462.  Only after this request for additional information did the ALJ decide to accord less weight to Dr. Gelin's reports.  Accordingly, the ALJ discharged her duty to develop the record.

11

Perez contends, however, that the ALJ failed to consider the length, nature and extent of the treatment relationship with Dr. Gelin.  In assessing this first factor, as set forth in 20 C.F.R. § 404.1527(c)(2)(ii), an ALJ will "look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories."  The ALJ did so.  The ALJ gleaned what she could from the entirety of Dr. Gelin's records regarding the nature and extent of his treatment relationship with Perez, even seeking additional information from the physician in accordance with the regulations.  AR at 461.  Dr. Gelin, however, had no other records.  AR at 462.  Thus, the ALJ's decision demonstrates that she evaluated all requisite factors in weighting Dr. Gelin's opinion, and, she expressly noted them in her decision.  AR at 16.

## B.  Evaluation of Subjective Complaints

Perez next argues that the ALJ improperly assessed his credibility by discrediting his statements concerning his symptoms and limitations.  In determining the credibility of a claimant's subjective complaints, the ALJ first must ascertain whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms; and second, must then evaluate the intensity, persistence, and limiting effects of those symptoms.  *See* C.F.R. § 404. 1529(b)-(c).  The ALJ must set forth "specific reasons for the finding on credibility, supported by the evidence in the case record."  SSR 96–7.  Where a claimant's subjective complaints suggest a greater severity

12

than can be shown by objective medical evidence, the ALJ must consider other relevant factors, including: (i) the claimant's daily activities, (ii) the frequency and intensity of the pain and other symptoms, (iii) the medications taken and their side effects, and (iv) other treatment administered to alleviate pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3). However, the "Secretary is not obliged to accept without question the credibility of such subjective evidence." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

The ALJ found that Perez's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 15. The ALJ credited Perez's "consistent work history," but concluded that the evidence does not support his claim that he would be unable to perform even a limited range of sedentary work.[4]

The ALJ emphasized that Perez's daily activities, which included lifting five to ten pounds, cooking, shopping, cleaning, and doing laundry with his son's help, did not support his alleged inability to work. The ALJ noted inconsistencies in the record and Perez's testimony relating to her ability to perform daily activities. During the hearing, Perez testified that he takes "one to two hour naps during the day;" however, the treatment

---

[4] Sedentary work involves lifting no more than ten pounds at a time, and generally requires a good deal of sitting. 20 C.F.R. §§ 404.1567(a), 416.967(a). Walking and standing are required only occasionally in performing sedentary work and sedentary work "by its very nature," is work performed primarily in a seated position, and entails no significant stooping. SSR 83-10.

and other notes do not document complaints of significant fatigue.  AR at 17.  Perez's reported daily activities further undermine his symptoms of fatigue and disabling back pain.  Perez testified, and Dr. Dickerson also confirmed, that he could cook, clean, shop, and do laundry, with his son's help.  AR at 17.  The ALJ also properly denoted that while Perez has undergone a course of physical therapy and medication, he "has not been recommended epidural injections, surgery, or other invasive treatments." AR at 15.

The crucial factors in the ALJ's determination were "set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Moreover, not "every conflict in a record [must] be reconciled by the ALJ."  *Id.*  Therefore, the court finds the ALJ's credibility determination supported by substantial evidence.

## C. Vocational Expert's Testimony

Finally, the Commissioner satisfied his step five burden by establishing that Perez was able to perform other work in the national economy.[5]  In so concluding, the ALJ relied upon the testimony of vocational expert Melissa Fass Karlin.  "It is standard practice for the Commissioner to use vocational expert testimony to satisfy his burden of showing that there exist jobs that the claimant is capable of performing, and the ALJ may rely on the testimony of such an expert, including responses to hypotheticals."  *Matta v. Astrue*, 2011

---

[5]  The burden of proof rests on the claimant for the first four steps; however, at step five, the burden shifts to the Commissioner.  *See* 20 C.F.R. §§ 404.1560(c)(2), 416.920(b)-(g).

WL 4975841, at *3 (E.D.N.Y. Oct. 19. 2011); see also *Butts,* 388 F.3d at 384 (2d Cir. 2004).

The claimant does not challenge the vocational expert's opinion that significant jobs exist in the national economy for the type of person described in the ALJ's hypothetical.[6]  The vocational expert opined that Perez could perform "the requirements of representative occupations such as (1) surveillance monitor (unskilled, sedentary work with 6021 jobs locally and 60566 jobs nationally), (2) order clerk (unskilled, sedentary work with 1127 jobs locally and 18716 jobs nationally), and (3) bench hand (unskilled, sedentary work with 244 jobs locally and 28260 jobs nationally).  AR at 18.

Instead, Perez contends that, since the ALJ erred in her RFC and credibility determination, the ALJ's step five analysis necessarily was error; that is, Perez argues that the hypothetical question posed by the ALJ to the vocational expert was incomplete because the ALJ failed to include certain functional limitations assessed by treating physician Dr. Gelin.  Given that the ALJ afforded little weight to Dr. Gelin's RFC opinion, the ALJ's decision to omit limitations from that report was proper.  In short, Perez's argument that the ALJ erred at step five is entirely contingent on his arguments that the

---

[6] The ALJ instructed the vocational expert to assume a hypothetical individual that could lift "10 pounds frequently, c[ould] stand and walk for six hours a day, c[ould] sit for six hours a day, but would have to alternate between sitting and standing a few minutes every hour."  AR at 43.  Since Perez testified that she can sit or stand for twenty to thirty minutes at a time before needing to alternate positions, AR at 35, the ALJ's hypothetical question involving an individual who  "would have to alternate between sitting and standing a few minutes every hour" was proper.  AR at 43.  Additionally, although the Dictionary of Occupation Titles does not define a "sit/stand option," the expert explained that her nearly twenty-five years experience in the field served as the basis for her opinion.  AR at 43.

ALJ incorrectly assessed his RFC. Since the court has rejected those arguments, this argument necessarily fails. Accordingly, the ALJ properly considered Perez's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines in making her step five determination. 20 C.F.R. Part 404, Subpart P, Appendix 2.

In sum, the ALJ evaluated substantial evidence in reaching her conclusion that Perez was "not disabled," including numerous medical records pertaining to Perez's symptoms and pain, along with their frequency, duration, ability to be remedied with medication, and the accompanying limitations she experienced as a result. Because it is clear "what legal standard was applied in weighing the treating physician's opinion" and the Commissioner provided Perez with "'good reasons' for the lack of weight attributed to the opinion," remand is inappropriate. *Schaal v. Apfel,* 134 F.3d 496, 505 (2d. Cir. 1998); *see also Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996).

## IV

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, the final decision to deny benefits under the Act is affirmed, and Perez's complaint is dismissed.

**SO ORDERED.**

/s/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 20, 2013

16